All right, our last case today is number 22-13383, Armando Guevara. Armando Guevara versus Lafice Corporation et al. Mr. Zeidel. Good morning. Jay Zeidel on behalf of the appellant Armando Guevara. Briefly, a factual summation of his employment with the appellees was that in or about circa 2004, he was hired in order to be kind of a hybrid employee between the defendant's company here in Miami called Lafice Corp. which is Latin American Financial Services and the defendant's private home which is located in Key Biscayne. He was hired on a fixed salary or a semi-monthly salary basis and everything in the record shows salary, salary, salary. All of that's in front of the court. There's nothing, nothing in this case that appears as an hourly rate for the fifty-seven hours that we're claiming in this case were mischaracterized to suggest that he was ever paid an hourly rate until after the lawsuit was filed and until after the appellees retained their counsel. Now, specifically, the defendants point to what they say is one piece of evidence in the record and that is the sort of handwritten notes that Mr. Guevara created attempting, I think this is the right characterization, attempting to figure out maybe what an overtime rate for his situation was. Okay. Right? So what do you say about that? Well, I say that that was a complete misapplication of the applicable law by the district judge in all deference to Judge Segal. Because it's been longstanding in this country since 1946 in Anderson versus Mount Clemens that the employer is charged with keeping employee records of time worked, of hours worked, whether the employee is paid by the hour, by salary, or by any other difference. The CFRs codify that obligation in 29 CFR 516.2 and it gives all of the different things that an employer must keep in order to show whether an employee is an hourly employee or a salaried employee. What we believe that the evidence shows clearly in this case is that the appellees manufactured a hourly rate and an overtime rate after the case was filed and after they had retained counsel. And we've shown evidence in this record that nothing shows up in this case as an hourly rate for Mr. Guevara for the 57 hours that he worked weekly for this salary until the case was filed. We've shown the date that opposing counsel appeared and on that same date for the first time in 15 years, Mr. Zamora, one of the appellees, texts Mr. Guevara and tells him, Armando, you know that you've always been paid by the hour with overtime. So it's so clear what happened. I mean, it doesn't even create a factual basis to deny liability in Mr. Guevara's favor. And that's really what we're asking this court to do. Because several cases, including the one cited by the appellees, stand for the proposition that this regulation 778.309, which is the one that says, yes, an employer can pay a fixed amount to an employee if the employee always works the same amount of hours and the same amount of overtime. Okay, granted. That can be done. But that does not negate the employer's obligation to keep records under 516.2 of the CFR, showing that it's really an hourly and overtime situation as opposed to a fixed salary. And that's... Okay. Assuming he did get a, this is, I'm just trying to understand how we resolve what he was owed in terms of overtime. We do need to at least calculate what his hourly rate would be, right? Or what do we need to uncover first? Absolutely. That's the linchpin of the whole case. And this court has recently ruled on this in a recent order that was entered this year in 2013. I believe it was by Judge Rosenberg. But that's where all of these cases start. You mean the district court? When she was a magistrate. No, no, no, no. When she was an appellate judge in 2023. No, no, because you said, I've made this mistake too. You said Rosenberg. Oh, sorry. Judge Rosenberg is a district judge at West Palm Beach. Yes, that's correct. That's correct. Right, okay. Okay. You mean Judge Rosenbaum for this court? Correct. That is correct. Okay, got it, got it. Please excuse me for that, Judge Rosenbaum. I've made the same mistake too to my embarrassment. So... So in calculating that, now that we know that we at least have to find the hourly rate, it does seem from the record that Mr. Guevara wasn't accurate about or didn't know for sure exactly what that calculation would have been and the Zamora's didn't keep good records about that. So now you have a credibility determination. That's for sure, Judge. There's no question that this case, in our humble opinion, I mean this should have never ever resulted in summary judgment for the employers. What we're asking this court to do is something more than that. And in a case like this, where the employers keep no records whatsoever of time worked, they pay him a salary, they say the 57 hours, Armando, you work the 57 even when you don't and I underscore the importance of even when you don't work 57 hours, you're still going to get the same payment. Even in the months that have five weeks, you're going to get the same semi-monthly payment as you do... Your position is that even if, even if the hourly rate and purported overtime were not created after the fact, there are still weeks of gap that aren't accounted for in a bimonthly payment system. Right. A hundred percent, Judge Jordan. And I was thinking to myself hypothetically because the closest cases that focus on this factual issue that we have in this case deal with employers at least keeping some records of time worked or at least an acknowledgment signed by the putative employee that says I do understand that the fixed daily wage, for example, is going to include my regular and overtime wages. Even in those cases, the courts have either granted summary judgment for the employees or at least found a factual issue as to what the payment represented. But in this case, we have no records. We have a complete years and years, almost 15 years of employment for this, the purposes of this case based on the limitations was three years. Everything is salary. It says it on the checks. The employees of LaFece Corp said, yeah, it says salary. I don't know why. That's what Mr. Zamora said to do. There was also testimony, I think, from some people at the corporation or the company that they did not know how the salary was calculated or computed. Correct. That's for sure. And even Mr. and Mrs. Zamora did not know what the hourly rate was when asked at their deposition. They said $9 and change. They think, you know, in a typical case, and it's very, I'm not going to say never just to avoid violating the adage never say never. So it's extremely unlikely or unusual for summary judgment to be granted to an employer in one of these cases where the employer keeps no time records. I mean, even in cases where the time records are kept and the employee can dispute the accuracy, you still get a jury trial on that. So that's why this one is kind of out in left field there, that this judge went an extra step and said that because Mr. Guevara signed something that was not under oath during 2018, indicating that he knew that he got $15 an hour when he worked certain occasions over 57 hours a week, the district judge concluded that that necessarily means that he knew that his regular rate was at least $10 an hour and that his overtime rate was $15 an hour. But his actual hourly rate, they say, was $9.62 an hour, right? Right. And that doesn't even work. In these cases that we've cited in our brief, that even at the beginning of the reply, I mean, courts have found even when there's pennies difference in the hourly rate, that's very significant. Why? Because the hourly rate, like I responded before, is the linchpin of these cases. It's an actual fact. It cannot be artificially created by the employer. And that's exactly what's been done here. I just want to, my remaining seconds on Lefise Corp. being a joint employer, they squarely fit the definition of 203D under this statute. I mean, that is an expansive definition of employer. I think that courts often refer to it as striking breath. I don't even, it says any person acting on behalf, directly or indirectly, on behalf of an employer in relation to an employee qualifies. Why would we address that, though? I mean, the district court never addressed that, the district court never got to that. Why would we reach out and address that argument? Well, in the first summary judgment order that was reconsidered in part, the district judge did consider that. And he found that Armando did not work for Lefise Corp. and that Lefise Corp. doesn't qualify as an enterprise under the FLSA, both which are starkly refuted by the evidence in the record. I mean, they gross over $500,000 a year. They regularly affect interstate commerce because they're constantly communicating with the Zamora's other Lefise companies in Central and America, South America. There were a lot of problems with that order, though, right? I mean, that's the reason why the district court withdrew the order and replaced it with some other order. I guess that's my point. The district court could have done the same thing in a second order they did with the Lefise Corp. They could have addressed this as another grounds, right? Well, potentially, Your Honor, but the way I read it is that, look, we asked for reconsideration on that point. It was never addressed, and therefore, we have that first summary judgment that has not been disturbed as to that particular finding, and that's why we're asking this court to reverse on that basis. All right, Mr. Studdall. Thank you very much. Thank you. You saved your time for rebuttal. Thank you. Mr. McRae. Yes, may it please the Court. Richard McRae, and I'm here on behalf of the appellees, Lefise Corp., Robert Zamora, Sr., and Maria Zamora. We respectfully submit that the district court did not err in granting summary judgment for the appellees, and that the district court correctly concluded that the appellant, Mr. Guevara, failed to produce more than a scintilla of evidence demonstrating that he worked overtime without compensation. Let me tell you, Mr. McRae, one of the issues I have. Yes, sir. So there is a regulation which we've said is an interpretive bulletin, not a regulation, but it's still entitled to skidmore deference, and we applied it in that case. It's 28 CFR 778.113, and here's what it says, and then I'm going to go through a calculation with you, at least my calculation, and if you can follow it, maybe you can tell me where I'm off. It says a semi-monthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52. Once the weekly wage is derived at, the regular hourly rate of pay will be calculated as indicated above. That is, you divide the amount of money paid by week by the number of hours worked. So here's my calculation under that reg. He's paid $1,260, $1,260, 24 times. So you multiply that by 24. You get $30,240, $30,240 divided by 52 equals $581.53, $581.53 divided by 57, the number of hours he works a week, you get a regular hourly rate of $10.20 an hour. If that's right, that completely throws off the calculation that he was paid $9.62 an hour and then time and a half, $14.43 an hour to exactly add up to the amount he received on a bimonthly basis. Why am I missing something? Your Honor, I don't think your calculations are wrong. We rely primarily on 29 CFR 778.309. Which says what? Which allows where an employee works a regular fixed number of hours in excess of overtime for there to be, it's proper to pay him in addition to his compensation for non-overtime hours a fixed sum in any such week for his overtime work. But there's a lot of evidence in this record. Remember we're at summary judgment, this is not a trial. Correct. There's a lot of evidence in the record or a fair amount of evidence in the record indicating that this was salary and not an hourly payment. Judge, how do you get away from that at summary judgment? Judge, when you say there's a fair amount of evidence in the record. The checks all said salary. They said salary but there's no ... The employees didn't know that it was an hourly payment. The Zamoras didn't know that it was an hourly payment. Nobody knew the hourly rate. Judge, if I may, Mr. Zamora testified and this is at page ... I'll get it to, I think it's at page 142 of his deposition. That he told Mr. Guevara, quote unquote, many times that he was being paid hourly and that his hourly rate was less than $10 and his overtime rate was less than 15. The only evidence in the record of salary is that notation on the check and there's no indication as to who wrote it. Their understanding whether that was a generic term as opposed to a legal term or ... That's not the only inference that can be drawn from that notation, especially for so a multi-year period of time. Well, again, your honor, you have Mr. Zamora, Mr. Guevara is the only one who testified that he thought his hourly rate was more than $10 an hour. He said $11.05. Who said that? Mr. Guevara. Oh, yeah, well ... Okay? Here's the point. He wasn't paid ... I mean, the fact that they can't agree on the hourly rate suggests that he wasn't being paid by the hour, right? Not necessarily. But we all know he's getting paid $6.30 on a bi-monthly basis. $6.30 and $0.11. And the Zamora testimony is that he was being paid on hourly rate. The testimony, the declaration and the deposition testimony by Mr. Guevara was that he didn't understand that and that he was never told that he was being paid an hour. Did he keep track of his hours? Excuse me, sir? Did he keep track of his hours? Only when he worked over 57. Right. So then how was he being paid hourly if he never kept track of his hours? Well, if he thought he was being paid a salary, there would be no reason for him to keep track of his hours. Oh, sure there was. I was paid a salary in the law firm, but I kept track of my hours to make sure I was, you know, I could tell them how much I'd worked more than they expected me to. But if he thought he was getting a flat salary, there would have been no reason for him to keep track of his hours over 57, presumably since the Zamoras were traveling out of the country, as the evidence shows. Was he ever paid less than 630? No. So he always worked 57 hours? Well, he says in his deposition, nevertheless, I think over the course of 16 years, it's reasonable to conclude there were times when he when he left early or missed a day. But that doesn't necessarily mean he didn't make up the time. His testimony must be accepted that he worked 57 hours, sometimes more, never less. If that's the case, why isn't his testimony about being paid $11 an hour also have to be accepted at summary judgment? When there are no hard copy records of an hourly rate? Because it's contradicted by the objective evidence. This court has followed. What's the objective evidence? I mean, if he was being paid, if he's being paid $11 an hour, let's take him at his word for just a second. Then that means that your that your client's liability may not be as much as Mr. Guevara says it is. But there's some liability because if he's being paid $11 an hour, he's not being paid a proper overtime rate for all those hours at $11 an hour. You got to be being paid somewhere in the 16 to $17 range. And he was being paid according to the district court and to you 1443 an hour for overtime rates. So it may significantly reduce his recovery, but it doesn't eliminate the issue of fact on whether he was properly paid overtime. Judge let me let me you have one person saying he was paid nine something an hour or less than 10. You have another person, the employer, you have the employee saying I was paid at $11 or something an hour. No records to contradict either one. I disagree with that judge and here's why. And let me back up and say that this court as well as the Supreme Court has recognized a somewhat broader rule than the district court relied upon. The district court relied upon the sham affidavit rule, but this court and the Supreme Court have repeatedly recognized the broader concept of preferencing. That is that when a non-movement introduces subjective evidence such as testimony that is contradicted by objective evidence, that that's not sufficient to raise a genuine issue of material fact. That's not a correct statement. Let me put it this way. In my opinion, what you just said is too broad a statement of the law. And here, tell me if I'm wrong, the little slip of paper that Mr. Guevara created, when was that created? Just a second judge. I'll address that. But this court said in Baxter v. Roberts two years ago, we have repeatedly applied this evidence, notwithstanding the presence of some contradictory testimony from a non-movement elsewhere in the record. The Supreme Court has said the same thing. We cited the Scott v. Harris. That's a video case. Some of them are video cases, but they deal with the distinction. We've also said in a non-bank opinion called Stein that a person's self-serving affidavit, a party's self-serving affidavit, even as long as made under personal knowledge, with personal knowledge, is sufficient to create an issue of fact, even if it's self-serving. Again, the court has recognized the distinction between an issue of fact created by subjective testimony. What's the objective evidence in this case? The objective evidence, your honor, are the notes. When were the notes created? I don't recall that. I just know they were produced in this case sometime during employment. Notes were created before or after his deposition? They were created during the course of his employment. Then they can't be sham. No, no, no. A sham affidavit rule is you're deposed, you say something, and then when the other side moves for summary judgment, you're like, oh, here's my affidavit clarifying or rejecting what I said in the deposition, and it's really this and not that. That's a sham affidavit, but if he created the document during his employment and then he testifies, that document can't be a sham document, and his deposition can't be a sham deposition either. We're not suggesting that the document is a sham document. We're saying, as the district court found, that it accurately reflected his understanding that his overtime rate was $15 an hour. That's objective. Even though he testified contrary to that in his deposition. Correct. That's subjective testimony. The objective evidence is his notes created beforehand showing that he understood his overtime rate was $15 an hour. I thought you said his overtime rate was $14.43 an hour. I think it was $14.62, but $14.43 is correct. $9.62, $14.43. $9.62 and $14.43, very unusual numbers to agree about. Right. As is $6.3011. Why would there be a salary for $6.3011? But, so what does that mean? I guess my point is that the fact that he said he thought it was $6.3011. Let me continue with the objective evidence, because there's also objective evidence that he accepted and signed four checks for overtime that reflect $15 an hour times X rate. There's objective evidence. Yeah, there's no question that he gave, when he worked over 57, they paid him extra. Right, and there's objective evidence in Mrs. Zamora's notes that she calculated his overtime hours over 57 at $15 an hour. But so why, how does that? And that's not $9.37. I don't understand how that helps you. I'm sorry? I'm sorry. I shouldn't have interrupted. Go ahead. I don't understand how that helps you, the fact that they always paid him $6.30, and then when he worked more than 57, they paid him $15 an hour extra. I don't understand how that. The testimony that was rounded up, but effectively it was for his overtime rate, which is much less than what he claimed his overtime rate was, and that he accepted payment and he made notes of that. And lastly, let me point out that Mr. Guevara has... But it wasn't $14.40. $14.40. It was not. It was not. So that's part of my point. How does that help you? If his overtime rate was actually $14.43, which is what you say it was, then that's what they would have paid him. Right. Essentially, they paid him more than they had to. That's one inference. Yes. The other inference is they weren't keeping track of his hours at all, and they just paid him extra when he worked more than they thought he was supposed to. Since they were traveling, the reasonable inference is they had to accept his representation of how many times when he worked over 57. But let me just say this. That doesn't go anything to the regular hourly rate. What if Ms. Zamora was right and she was paying him $15 an hour for overtime over 57? That means his straight time is 10. Not 9.62. I agree. You've got some liability. The record is that when they paid him over 57, they rounded up, because they paid him in... That's an inference, but it doesn't have to be accepted. Couldn't a jury make an inference? I mean, explain to me why this is not a reasonable inference, because it's frankly the only inference I can come up with. They weren't keeping track of his hours. He wasn't paid hourly. And when he worked more than they expected him to, they gave him some extra money because he worked more than they expected him to. Why isn't that the right inference from this? They paid him $6.30 as a salary. When he worked more than they expected him to, they paid him some extra money. Nobody was really keeping track of this. The guy works on a boat. These people are international. They rarely come here. Why isn't that the right... I think that's possible, but again, I think that the trial court properly found that there were multiple instances of objective evidence that supported the testimony of Mr. Zamora. I would also point out that Mr. Guevara stated repeatedly throughout this case that he was not seeking any pay for the hours that he worked over 75, even though 57, despite his contention that at 11.05 an hour, his hourly rate for overtime would have been higher than $15 an hour. That's another at least tacit concession that the $15 an hour for overtime was the correct overtime rate. What was the Zamora's explanation for owning a multi-million dollar company with multiple employees and yet they didn't keep any time record regarding Mr. Guevara's working hours? I can't answer that. I can point to the fact that he was a domestic service employee and I'm not sure that that lack of sophistication lies with the corporation so much as it does with any individual who uses someone in their home. So you mean that if we find that there wasn't a joint employment situation, it's Zamora's responsibility to keep track of those hours. It's not unusual for a family not to keep records of their domestic employees? I'm not saying they shouldn't. I'm just saying that it would be, it would not be beyond the realm for individuals not to do that because they don't operate their homes like businesses. And just to be clear, there's nothing in the record that answers my question. No, and let me just say that the record keeping issue I believe is a red herring because of the fact that the Supreme Court, there is no private right of action for failure to keep records. It can be brought by the Department of Labor, but the fact is that the Supreme Court said in Mount Clemens that the proper sanction, the consequences of not keeping proper hours is to relax the burden of proof for the employee with respect to the number of hours worked. In this case, there's no dispute. He's suing for the difference between 40 hours and 57 hours. The amount of hours that are being sued over are not an issue in the case, so the record keeping issue has no relevance to the issues. All right, thank you very much. Thank you. The case law cited in our briefs, in particular page 10 of the reply, make clear that section 778.309 cannot apply if employers cannot show by records how many hours the employee works per week. 309 is meant for a situation where an employee always works the same amount of hours regular in overtime every single week. The district court found and it's in the order of summary judgment number two that it's undisputed that the Zamora's paid Mr. Guevara the same amount even when he didn't work the 57 hours. If he missed a day, if he missed hours, whatever it may have been, they always gave him the is my spin on it that they just paid him the amount and said, look, it takes care of your overtime and hourly rate. Now, what's interesting in this case amongst other things is that about seven or eight years ago when the Zamora's were sued the first time under the same statute regarding I believe two other employees, we deposed their labor law counsel from that case for this one and he said that he advised them to keep records of time worked for their hourly employees which was Mr. Guevara and he even went to say suggesting that an hourly employee can be paid by a salary when they're constantly working overtime, the attorney said in his deposition that that would be tantamount to malpractice to advise a client as such. So you're dealing with employers, they're just too busy to deal with Mr. Guevara here in Miami. I mean, they've got companies all over Central America, Mexico, South America, they've got Lafice Corp here that's managing the debt or doing the accounting for all of the other companies. Are you giving them an excuse? I'm not giving . . . Okay. I'm not giving them any excuse, Judge. I'm just saying that this was a willful violation. This was just reckless. They were told by an attorney to do it and they didn't do it. So they come post facto after they're sued, after their attorney files an appearance in the case and that same day, for the first time in 15 years, Mr. Zamora texts Armando saying Armando, tells him in Spanish, you know that you've always been paid by the hour in overtime. I mean, come on. Everybody knows what happened. I mean, even a . . . I don't even know if that creates a jury question in the employer's favor. It's so clear what happened. But . . . Can you give me a theory for why it was 630 and 11 cents? Well, I think that what they did is they took an amount of money per year that they wanted to pay to Armando and they were paying him the same way they did to the Lafice Corp workers. I mean, they were funding Lafice through the Costa Rican Lafice Bank and they were paying Armando the same way on the same structure and they just allocated this salary, annual salary of $32,000 and change to Armando. They decided to pay semi-monthly like they did all of their other workers at Lafice and everything said salary on it until this case and then they tried to go and retroactively make it into an overtime and an hourly pay case. But you can't do that with missing records and that's why 778.309 cannot apply. In the case law clearly states, this section cannot apply unless the employer keeps records to show how many hours the employee works. If this court finds that 778.309 cannot apply as a matter of law, then Armando should win liability against the Zamoras in this court's decision and that's what we're asking the court to do. I'm citing, we did in our brief, the Acosta versus Walk on Wheels USA LLC case at page 10 of our reply brief. Another case, Acosta versus Revolutionary Home Care Inc. at page 11. This is like Judge Jordan said, a classic case of 778.113 that directly speaks to a semi-monthly salary. How do you calculate hourly pay for a semi-monthly employee, which is exactly what Armando was. That's what all the checks said. They have no records to refute that. That CFR is directly on point and should this court find that, then Armando should win on liability and just let the jury determine damages in this case and whatever else you decide regarding LaFeist Court being a joint employer. There's no reason. These were anticipated hours. Even when he worked less than 57 hours, he got the same salary. You can't do that and call it overtime under the Hickman cases and the other progeny of cases that we've cited. It doesn't count as overtime, even if it's economically beneficial to the employee to work less hours and get the same pay. The case law says you can't do it because it's, in effect, an end run around the FLSA. That's exactly what happened in this case. Thank you. Thank you both very much.